# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>23ANDME HOLDING CO., *et al.*,[1]<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 25-40976-357<br><br>(Jointly Administered) |
| Hector Gutierrez,<br>　　　　　　Plaintiff,<br><br>v.<br><br>23andMe, Inc., Anne Wojcicki, TTAM Research Institute, Does 1 Through 10,<br>　　　　　　Defendants. | Adv. Proc. No. 25-4043 |

**DEBTORS' MOTION TO DISMISS PRO SE ADVERSARY COMPLAINT**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") submit this motion to dismiss Plaintiff Hector Gutierrez's *Complaint for Determination of Non-Dischargeability, Fraud, Constitutional Violations, and Relief from Stay* [Docket No. 1016] (the

---

[1] The Debtors in each of these cases, along with the last four digits of each Debtor's federal tax identification number, are: 23andMe Holding Co. (0344), 23andMe, Inc. (7371), 23andMe Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595). The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

"Complaint" or "Compl.") against 23andMe, Inc.[2] ("23andMe" or the "Debtor"), Anne Wojcicki, and TTAM Research Institute ("TTAM," and together with the Debtor and Anne Wojcicki, the "Defendants").

**Preliminary Statement**

1. While not a model of clarity, the Complaint appears to seek relief from the automatic stay so that Plaintiff may bring for the first time in a different federal court seventeen causes of action ranging from criminal wire fraud to Fourth Amendment violations. The Complaint also seems to seek a declaration that any debt to Plaintiff on account of these supposed claims is nondischargeable in these chapter 11 cases. The Complaint wholly fails to describe any basis for such relief, or any factual allegations that could give rise to a plausible claim against the Debtors. The Complaint should be dismissed.

2. *First*, Plaintiff's request for relief from the automatic stay is not a cause of action that is properly addressed through a complaint. Nor does the Complaint make any effort to show cause as to why relief from the stay should be granted, and there is none.

3. *Second*, Plaintiff cannot obtain a declaration of nondischargeability under Bankruptcy Code section 523(a), which does not apply to corporate, chapter 11 debtors, and his constitutional arguments are meritless.

4. *Third*, to the extent Plaintiff seeks affirmative relief from this Court on any of his purported claims, those claims should be dismissed because Plaintiff fails to adequately plead any facts setting forth any plausible claim or the claims are barred as a matter of law.

---

[2] The Debtor formerly known as 23andMe, Inc. recently changed its name to ChromeCo, Inc. following consummation of the sale of substantially all of the Debtors' assets in the chapter 11 cases.

2

**Background**

5.  Plaintiff filed the Complaint on July 17, 2025, which purports to seek relief from the automatic stay and "authoriz[ation]" for Plaintiff to pursue in "the U.S. District Court, Northern District of California" seventeen different claims against the Defendants, including various federal and state constitutional violations, fraud, negligence, conversion, violations of genetic data laws, and intentional infliction of emotional distress, among other claims.  Compl. ¶¶ 24–40.  The Complaint also appears to seek a declaration that the debt associated with Plaintiff's claims is not dischargeable in bankruptcy and a declaration that Defendants "engaged in actionable misconduct." *Id.* at 8.

6.  While the Complaint fails to meaningfully describe the factual allegations supporting its alleged claims, the Complaint suggests these supposed claims arise out of 23andMe's prepetition data breach (the "Cybersecurity Incident"), Compl. ¶¶ 11–15, and "moving customer data to TTAM without disclosing the breach" in connection with the sale transaction approved by the Court, Compl. ¶ 16.

7.  Contrary to the Complaint's allegation that the Cybersecurity Incident was not disclosed, in October 2023, Debtor 23andMe Holding Co. (the "Company") identified and disclosed the Cybersecurity Incident, which resulted in significant media attention.[3] The Company publicly disclosed the occurrence of the Cybersecurity Incident, including in an 8-K publicly filed with the U.S. Securities and Exchange Commission on October 10, 2023.[4] The Cybersecurity Incident resulted in numerous actions being filed or threatened against the Company in United

---

[3]  *See, e.g.*, Rebecca Carballo, *Data Breach at 23andMe Affects 6.9 Million Profiles, Company Says*, N.Y. Times (Dec. 4, 2023), https://www.nytimes.com/2023/12/04/us/23andme-hack-data.html.

[4]  23andMe Holding Co., Form 8-K (Oct. 10, 2023), https://investors.23andme.com/node/8961/html.

3

States federal and state courts, Canada, and the United Kingdom, as well as the initiation of various domestic and foreign governmental investigations.

8.  Plaintiff appears to be a member of a putative class in the federal litigations arising out of the Cybersecurity Incident, which were consolidated in April 2024 as a multi-district litigation ("MDL") in the U.S. District Court for the Northern District of California. *See* No. 24-md-03098-EMC (N.D. Cal.). Following mediation, the MDL parties reached a settlement agreement. On July 10, 2025, the MDL plaintiffs filed a consolidated class proof of claim on behalf of the class ("Class POC").

9.  As the Court is aware, following extensive litigation and two-day hearing, the Court approved the sale of certain of the Debtors' assets to TTAM. In doing so, the Court overruled the objections of various state attorneys general in a 38-page opinion, which concluded, among other things, that the sale transaction did not violate certain state genetic information privacy acts. *See Memorandum Opinion* at 19–30 [Docket No. 908].

10. On July 14, the Debtors and TTAM closed the sale transaction approved by the Court.

**Argument**

11. This Complaint should be dismissed because it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)); *Stone* v. *Harry*, 364 F.3d 912, 915 (8th Cir. 2004) (recognizing that, "though pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced") (internal citations omitted). Conclusory allegations, however, are "not entitled to be assumed true." *Ashcroft*, 556 U.S. at 681. Similarly,

4

courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 556 U.S. at 555). Claims sounding in fraud are subject to the heightened pleading standard of Rule 9(b). Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009.

### A.      Relief from the Automatic Stay Is Unwarranted

12.     The principal relief sought by the Complaint appears to be relief from the automatic stay so that Plaintiff may pursue a variety of supposed claims—none of which are supported by any meaningful factual allegations—against Defendants in another court. Such a request is procedurally improper and fails on the merits.

13.     As an initial matter, an adversary complaint is not a permissible vehicle by which to seek relief from the automatic stay, which relief must by sought by motion. *See* Fed. R. Bankr. Proc. 4001 ("A motion under §362(d) for relief from the automatic stay—or a motion under §363(e) to prohibit or condition the use, sale, or lease of property—must comply with Rule 9014."); Fed. R. Bankr. Proc. 9014 ("In a contested matter not otherwise governed by these rules, relief must be requested by motion."). There is no "cause of action" for relief from the automatic stay and the Complaint accordingly should be dismissed to the extent it seeks such relief.

14.     No relief from the automatic stay is warranted in any event. Plaintiff wholly fails to demonstrate, as he must, any cause to lift the automatic stay. *See In re CLC of Am., Inc.*, 68 B.R. 512, 513 (Bankr. E.D. Mo. 1986) (recognizing that a party asserting cause exists for modifying automatic stay "has the burden of establishing a legally sufficient basis for such relief"). In assessing whether "cause" exists, courts must balance "the potential prejudice to the Debtor to the bankruptcy estate, and to the other creditors against the hardship to the [plaintiff] if [he] is not allowed to proceed in [another] court." *In re Blan*, 237 B.R. 737, 739 (B.A.P. 8th Cir. 1999). "The factors used to balance the hardships . . . include (1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the [plaintiff's] chance of success on the merits;

5

and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors." *Id.*; *see also In re Wintroub*, 283 B.R. 743, 745 (B.A.P. 8th Cir. 2002). Courts also consider "[w]hether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter." *Matter of United Imports, Inc.*, 203 B.R. 162, 167 (Bankr. D. Neb. 1996).

15. None of these considerations weigh in favor of relief from the automatic stay. Plaintiff has no pending action in any other court and, accordingly, no interests in judicial economy are served by authorizing Plaintiff to pursue an entirely new (and meritless) litigation in another forum. *See United Imports*, 203 B.R. at 167. That is particularly true here, where Plaintiff appears to complain about the Cybersecurity Incident or the Court-approved sale of certain of the Debtors' assets to TTAM. Those issues have been or will be squarely before this Court, including in connection with its approval of the TTAM Sale and in connection with proofs of claim as to claims arising out of the Cybersecurity Incident. *See id.* at 167–68. Further, as discussed below, Plaintiff has no likelihood of success on the merits of his supposed claims. *See infra* ¶¶ 20–23. There thus is no reason to impose on the Debtors the cost and burden of litigation in another forum less familiar with the issues that seem to be raised by the Complaint, or to subject other stakeholders to reduced recoveries as a consequence. *See Wintroub*, 283 B.R. at 745.

### B.  Plaintiff's Claims Are Dischargeable in Bankruptcy

16. Plaintiffs' request for a declaration that his debts are nondischargeable under Bankruptcy Code section 523 or under the United States Constitution should be dismissed under Rule 12(b)(6). The Complaint fails to make clear the basis on which Plaintiff seeks a declaration of nondischargeability but it seems to contend either that the discharge of debts under the Bankruptcy Code is unconstitutional or that any debts associated with Plaintiff's alleged claims are nondischargeable under section 523. *See* Compl. ¶¶ 41–43 (discussing "constitutional

6

objection to discharge"); *see also* Adversary Proceeding Cover Sheet (Form 1040), No. 25-04043, Dkt. 1-1 (identifying cause of action as "dischargeability - § 523(a)(6), willful and malicious injury"). Each claim is wrong as matter of law.

17. *First*, Plaintiff's objection to discharge "on the grounds that such discharge would violate Plaintiff's constitutional rights," including his rights to due process, "bodily autonomy," "informational privacy," and rights under the First, Fourth, and Fourteeth Amendments is meritless. *See* Compl. ¶¶ 41–43. Plaintiff nowhere explains *how* his constitutional rights would be violated by virtue of the fact that his claims may be discharged through a bankruptcy plan of reorganization. The discharge of claims through bankruptcy—a bedrock, foundational principal of the bankruptcy system—does not violate the United States Constitution. *See, e.g.*, *Sanchez* v. *Nw. Airlines, Inc.*, 659 F.3d 671, 675 (8th Cir. 2011) (the discharge of claims through bankruptcy is constitutional where creditors are given notice and opportunities to object). Plaintiff will—like every party in interest—receive the required disclosures and notices, and have an opportunity to object to, and vote on, any bankruptcy plan of reorganization that may be confirmed in these cases. There is no basis for any allegation that Plaintiff is being deprived of his constitutional rights.

18. *Second*, Plaintiff invokes section 523(a)(6) in the cover sheet to his Complaint. But section 523(a) makes express that its exceptions to discharge do not apply to corporate, chapter 11 debtors like the Debtor-Defendants. Section 523(a) applies only to preclude a discharge of certain debts of an "***individual debtor***." 11 U.S.C. § 523(a) (emphasis added). It is controlling, black-letter law that section 523(a) does not apply in to corporate, chapter 11 debtors: "[T]he exemptions embodied in 11 U.S.C. § 523(a) do not apply to corporate debtors." *Yamaha Motor Corp. U.S.A.* v. *Shadco, Inc.*, 762 F.2d 668, 670 (8th Cir. 1985); *see also In re Wisconsin Barge Lines, Inc.*, 91

7

B.R. 65, 68 (Bankr. E.D. Mo. 1988) (applying *Yamaha Motor Corp. U.S.A.* and holding exceptions to discharge under section 523(a) do not apply to corporate debtors).

19. Moreover, the Complaint is devoid of any facts suggesting that Plaintiff suffered a "willful and malicious injury." 11 U.S.C. § 523(a)(6). To prevail on a non-dischargeability claim under section 526(a)(6), Plaintiff must prove that "(1) the debtor caused an injury to the creditor; (2) the injury must have been willfully inflicted—that is, the debtor must have desired the injury or must have been substantially certain that his conduct would result in the injury; and (3) the debtor's actions must have been malicious." *In re Luebbert*, 987 F.3d 771, 778 (8th Cir. 2021). The Complaint nowhere pleads any facts that could support the outlandish claim that 23andMe subjectively desired to harm Plaintiff, or acted maliciously. *See In re Scott*, 403 B.R. 25, 45 (Bankr. D. Minn. 2009) (dismissing section 523(a)(6) claim because "Plaintiffs give no more than a sketchy identification of the corollary tort that would be the platform for the application of § 523(a)(6)" and "make no factual references to the specifics of negotiation and agreement as to the terms of their 'investment'" that formed basis of purported claim).

C. **To the Extent the Complaint Seeks a Liability Determination by This Court on Plaintiff's Purported Claims, Those Claims Should Be Dismissed**

20. While the Complaint appears to be limited to a request for relief from the automatic stay so that Plaintiff may pursue his supposed claims elsewhere, to the extent Plaintiff seeks to pursue those claims in this Court, *see* Compl. at 8 (requesting that the Court "declare" that "Defendants engaged in actionable misconduct"), Plaintiff's claims should be dismissed under Federal Rules of Civil Procedure 12(b)(6) and 9(b). *See* Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7012(b); Fed. R. Bankr. P. 7009.

21. *First*, several of Plaintiff's claims fail as a matter of law. While the Complaint identifies 18 U.S.C. § 1343 as a cause of action, Compl. ¶ 31, there is no private right of action

8

under the criminal wire fraud statute. *See, e.g.*, *Nath* v. *Select Portfolio Servicing, Inc.*, 732 Fed. App'x 85, 87 (2d Cir. 2018) (mem.); *Clements* v. *Chapman*, 189 Fed. App'x 688, 692 (10th Cir. 2006). Plaintiff's constitutional claims and claim under 42 U.S.C. § 1983, *see* Compl. ¶¶ 24–25, also fail because the Complaint does not—and could not—allege that 23andMe is a government actor or acted under "color of law." *See Mohamud* v. *Weyker*, 144 F.4th 1099, 1103 (8th Cir. 2025). As for the Complaint's claim under the Genetic Information Privacy Act ("GIPA"), this Court already correctly concluded that the TTAM sale did not implicate a transfer of genetic data that could give rise to a GIPA violation. *Memorandum Opinion* [Docket No. 908] at 19–27.

22.    *Second*, the Complaint fails adequately to plead any factual allegations that could state a plausible claim for relief. In fact, the Complaint is so devoid of any meaningful factual allegations that it is impossible to decipher what alleged conduct forms the basis of Plaintiff's supposed claims. For example, Plaintiff claims Defendants somehow violated his constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments or violated the California constitution, *see* Compl. ¶¶ 24, 33, but the Complaint contains no allegations as to how Plaintiff's constitutional rights were somehow violated, who violated those rights, or how the Defendants—who are not government actors—could have done so. Similarly, the Complaint alleges that Defendants violated an unspecified "Genetic Information Nondiscrimination Act," *see* Compl. ¶ 36, but nowhere contains any allegations that Plaintiff suffered any discrimination on account of his genetic information—let alone discrimination at the hands of 23andMe. The Complaint alleges a civil conspiracy claim, *see* Compl. ¶ 36, but nowhere alleges who conspired, for what purpose such a conspiracy existed, or any unlawful end. The Complaint's other claims are similarly devoid of any supporting factual allegations. *See* Compl. ¶¶ 24–40.

9

23. To the extent the Complaint includes any allegations, they are wholly conclusory or mere legal conclusions that fail to satisfy Rule 12(b)(6) or, in the case of the Complaint's claims sounding in fraud, *see* Compl. ¶¶ 26, 27, 30, the heightened pleading standard of Rule 9(b). *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). For example, Plaintiff alleges that he "believes" that "Defendants negligently or intentionally allowed unauthorized access" to Plaintiff's genetic data, Compl. ¶ 15, "engaged in fraudulent inducement and concealment," *id.* ¶ 19, and that the "use of bankruptcy to immunize liability constitutes fraud upon the court," *id.* ¶ 21. The Complaint fails to plead any facts supporting Plaintiff's "belief" that negligent or intentional conduct occurred, describing any supposed "fraud," or otherwise substantiating any of Plaintiff's supposed claims. And there are none. The Complaint elsewhere contains demonstrably false statements, including the assertion that 23andMe did not disclose its Cybersecurity Incident, which, as discussed above, *see supra* ¶ 7, was publicly disclosed by the Debtors in October 2023, widely reported on, and the subject of extensive prepetition litigation. *See Horsey* v. *Asher*, 741 F.2d 209, 212 (8th Cir. 1984) (holding that dismissal of claims that were "false" "was fully warranted" "either as frivolous or as malicious").

## **CONCLUSION**

24. The Debtors respectfully request that the Court (i) dismiss the Complaint with prejudice and (ii) grant any related relief the Court deems appropriate.

[*Remainder of page intentionally left blank*]

10

Dated: August 18, 2025  
St. Louis, Missouri

Respectfully submitted,

**Carmody MacDonald P.C.**
*/s/ Thomas H. Riske*
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:     (314) 854-8600
Facsimile:      (314) 854-8660
Email:            thr@carmodymacdonald.com
                     nrw@carmodymacdonald.com
                     jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
William A. Clareman (admitted *pro hac vice*)
Jeffrey J. Recher (admitted *pro hac vice*)
Jessica I. Choi (admitted *pro hac vice*)
Grace C. Hotz (admitted *pro hac vice*)
Lyuba Shamailova (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:     (212) 373-3000
Facsimile:      (212) 757-3990
Email:            pbasta@paulweiss.com
                     chopkins@paulweiss.com
                     wclareman@paulweiss.com
                     jrecher@paulweiss.com
                     jchoi@paulweiss.com
                     ghotz@paulweiss.com
                     lshamailova@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*